**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BERNARD WHITE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. H – 03 – 3632** |
| | § | |
| **OMEGA PROTEIN CORP. and OMEGA** | § | |
| **PROTEIN, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM AND ORDER**

Defendants have filed a Motion for Summary Judgment and a Motion in Limine.  Having considered the parties' filings and arguments at the motion hearing, as well as the relevant case law, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. #27).  Defendants' Motion in Limine (Doc. #37) is therefore **DENIED AS MOOT**.

**I.     BACKGROUND**

In 1998, Joe von Rosenberg, President and CEO of Defendant Omega, hired Plaintiff as a Corporate Vice President in charge of government affairs, investor relations, and public affairs; Plaintiff was then 50 years old.  Omega is in the business of catching fish, processing those fish, and selling the end-product (either fish meal or oil).[1]  Because all Omega products are derived from menhaden, a small fish which is abundant in the Gulf of Mexico and the Atlantic, any political or regulatory actions that jeopardize the company's fishing activities are of critical

---

[1] Omega produces protein-rich fish meals and oils, which are generally sold as animal and aquaculture feeds and fertilizers.  In recent years, Omega has also begun to produce refined, taste-free, colorless oils high in long-chain Omega-3 fatty acids (commonly known as "good fats") for use in human foods.

importance.  Plaintiff's primary responsibilities were to oversee the lobbying efforts to monitor and respond to these political and regulatory threats.

For the first few years of his employment at Omega, Plaintiff worked with little supervision from other executives.  After an incident that occurred in December 2001, however, von Rosenberg began to question Plaintiff's ability.  In particular, New Jersey passed a law that banned Omega from fishing in New Jersey state waters (the "New Jersey Incident").  Because Plaintiff was responsible for defeating this legislation, von Rosenberg believed Plaintiff was responsible for the setback.

In September 2002, a second troubling incident in government affairs occurred; Omega was surprised by a public hearing held by the Mississippi Marine Resources Commission concerning whether to restrict Omega's Mississippi fishing grounds (the "Mississippi Incident").  Von Rosenberg concluded that Plaintiff had failed adequately to monitor the Mississippi coastal counties.  The regulation was ultimately defeated, but at considerable expense to Omega, which had hired an outside law firm and experts to handle the public hearing.  Omega felt this matter was very serious and reported it as a possible adverse outcome in an SEC Form 10-Q.

Von Rosenberg considered terminating Plaintiff at this point because he had lost confidence in Plaintiff's ability to run government affairs; however, he was persuaded by other Omega employees to give Plaintiff another chance.  At this time, Plaintiff did experience a change in his job duties.  Von Rosenberg shifted some of Plaintiff's responsibilities to other executives so that Plaintiff could focus on government affairs; Plaintiff's travel budget was significantly reduced and he was instructed to travel less and delegate more tasks; and Plaintiff lost some of his autonomy. [2]

---

[2] This reduction in Plaintiff's tasks occurred after the Mississippi Incident, which coincided with Plaintiff's return to full-time work after having worked part-time so that he could receive cancer treatment.

In January 2003, Omega was surprised again when Alabama passed a regulation that restricted a portion of Omega's fishing grounds (the "Alabama Incident").  Von Rosenberg again concluded that Plaintiff had failed to monitor appropriately the activities of the Alabama Department of Conservation and Natural Resources.  After another costly effort to repair the damage, Omega was able to recoup a large portion, but not 100%, of the total fishing waters originally targeted by the Alabama regulation.

This final incident caused von Rosenberg to lose all confidence in Plaintiff's ability to run government affairs, so he terminated Plaintiff in March 2003.  Von Rosenberg believed that Plaintiff was not effective as an executive and overseer of government affairs, but acknowledged that Plaintiff had developed valuable institutional knowledge while working at Omega; therefore, von Rosenberg hired Plaintiff as a consultant.

After his termination, Plaintiff filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC").  He then brought this suit stating claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  Defendants moved for summary judgment on all claims.  Plaintiff has agreed to dismiss with prejudice his claim under the ADA.

## II.     SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c).  "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

3

party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (citations and quotations omitted).   A genuine issue of material facts exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).   The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

"[A] complete failure of proof concerning an essential element of [Plaintiff's] case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for Defendants. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   If Defendants show that there is a lack of evidence to support Plaintiff's case, Plaintiff "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (citation and quotation omitted).

## III.   AGE DISCRIMINATION

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1).   Plaintiff's claim is governed by the burden-shifting test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   Plaintiff must first establish a prima facie case of employment discrimination.   If Plaintiff meets this burden, then Defendants must articulate a legitimate, non-discriminatory reason for terminating Plaintiff; this serves to rebut the presumption of age discrimination that is created by Plaintiff's prima facie case.   If Defendants present this evidence, then Plaintiff bears the burden of presenting probative evidence that Defendants' stated reason was a pretext for discrimination.   *Davis v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996).

4

### A.  Defendants' Legitimate, Non-Discriminatory Reasons for Termination

The Court need not determine whether Plaintiff can make a prima facie case of discrimination, because even if he could, he cannot prove that Defendants' legitimate, non-discriminatory reasons for firing him are pretext.  Normally, a court will decide if a plaintiff has made a prima facie case of age discrimination before determining whether the defendant has offered a legitimate, non-discriminatory reason for terminating the plaintiff.  The facts of this case, however, make it starkly obvious that Plaintiff cannot carry his ultimate burden of showing that Defendants' legitimate, non-discriminatory reasons for terminating him are pretext.  Therefore, rather than belaboring the prima facie analysis, the Court focuses on Plaintiff's ultimate burden, which he clearly has not carried.

Defendants offer legitimate, non-discriminatory reasons for firing Plaintiff.  Most importantly, Plaintiff made three significant mistakes that demonstrated his inability effectively to oversee government affairs – a key aspect of his position.  Furthermore, Plaintiff had a fundamental disagreement with the CEO regarding the future of the company.  Finally, Plaintiff was hired and fired by the same person, which produces an inference that age discrimination was not the motive behind Plaintiff's termination.  These reasons strongly rebut any presumption of age discrimination, and Plaintiff simply cannot show that they are pretext.

Defendants hold Plaintiff responsible for what they perceive to have been three major errors in the area of government affairs: the New Jersey, Mississippi, and Alabama Incidents.  These Incidents reveal that Plaintiff was unsuccessful at defeating adverse legislation, and twice failed adequately to monitor activity targeting Omega's fishing grounds, which is a vital component of Omega's business.

After each of the Incidents, von Rosenberg's confidence in Plaintiff diminished. Throughout Plaintiff's employment with Omega, von Rosenberg continually took more and more responsibilities away from Plaintiff and parceled them out to other employees.  Plaintiff also made it clear that he disagreed with von Rosenberg's future vision for Omega and was reluctant to embrace the new move to the high-margin nutraceutical areas typified by the company's Omega-3 good fat products.   Von Rosenberg was ready to terminate Plaintiff after the Mississippi Incident, but decided to give him one more chance.  He finally terminated Plaintiff a couple of months after the Alabama Incident.

These legitimate reasons for terminating Plaintiff are further buttressed by the "same actor" inference that Defendants are entitled to in this case.  Plaintiff was hired at the age of 50 by von Rosenberg.  Plaintiff was fired five years later, also by von Rosenberg.  The fact that Plaintiff was hired and fired by the same person produces an inference that age discrimination was not the motive behind Plaintiff's termination.  This "same actor" inference was adopted by the Fifth Circuit in *Davis v. CSC Logic, Inc.*, stating:

> [C]laims that employer animus exists in termination but not in hiring seem irrational.  From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.

82 F.3d at 658 (citations and quotations omitted).  Because Plaintiff was hired and fired by von Rosenberg, it is illogical to conclude that Plaintiff was fired due to age discrimination.

### B.  Plaintiff Cannot Show Pretext

The ultimate determination in this case is whether a reasonable fact finder could infer discrimination.  *Crawford*, 234 F.3d at 902.  Plaintiff bears the burden of demonstrating that Defendants' proffered reasons are pretext.  "A mere  scintilla of evidence of pretext does not

create an issue of material fact in all cases." *Id*.  Plaintiff "must present 'sufficient evidence to find that [Defendants'] asserted justification is false.'"  *Id*. at 903 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Plaintiff's attempts to show pretext are unsuccessful.  Plaintiff does not dispute that he made the three mistakes alleged by Defendants, he simply challenges their significance and contends they are not the reasons for his termination.  Plaintiff trivializes the Incidents and concludes that because Omega was eventually successful in battling some of the adverse regulations, his poor performance is not a proper reason to fire him.  Plaintiff misses the point of Defendants' argument.  Regardless of the eventual outcome, the fact that these Incidents even occurred caused von Rosenberg to doubt Plaintiff's ability to run government affairs.

Plaintiff also alleges that because he was never reprimanded or criticized for any of the Incidents, they could not have been the reasons for his termination.  Yet Plaintiff admits that several of his duties were transferred to other employees so that he could focus his time on government affairs, that he lost autonomy in his position, that his travel budget was reduced significantly, and that he was instructed to travel less and delegate more tasks.  Plaintiff's iteration of the facts supports Defendants' explanation that he was fired because von Rosenberg lacked confidence in Plaintiff and felt that he was not adequately performing his job.[3]

Plaintiff explains that he received a bonus each year that the executives were eligible to receive a bonus, and when he rated his performance an "A" in his year-end self-evaluation, von Rosenberg never responded to the evaluation.  Plaintiff believes these facts show that he was an adequate employee, and therefore, Defendants' reasons for firing him are pretext.  First, Omega

---

[3] Plaintiff also does not dispute that he disagreed with von Rosenberg's vision for the future of the company, but argues that it could not have been a reason for his termination because von Rosenberg did not mention it when he terminated Plaintiff.  In light of the overwhelming evidence supporting Defendants' non-discriminatory reasons for firing Plaintiff, Plaintiff's case does not turn on this issue, and it warrants no further discussion.

only gave its executives one bonus after 2001, which is when the problems started occurring in government affairs, and Plaintiff's receipt of a bonus is not adequate evidence to rebut Defendants' explanation that by March 2003, von Rosenberg had lost all confidence in Plaintiff's abilities as an executive.   Second, Plaintiff's self-evaluation memorandum was written in October 2001, and therefore predates any of the Incidents.  In any event, Plaintiff's opinion of his own performance is not relevant.  *See Swanson v. GSA*, 110 F.3d 1180, 1186 (5th Cir. 1997) (explaining that the pretext question does not concern what the employee thought of his own behavior, it concerns what the employer thought of the employee's behavior).

Next, Plaintiff argues that because Omega hired him as an independent contractor after terminating him, that it could not really have believed he was an inadequate employee. Plaintiff's argument is based on a faulty premise.  Plaintiff states that he performed the exact same duties as an independent contractor as he had been performing before he was terminated. This is simply not true.  As an independent contractor, Plaintiff was a supervised consultant, rather than a high-level, autonomous executive; lobbyists who had previously reported to him ceased to do so; he was no longer involved in making strategic decisions affecting government affairs; he continued to handle "day-to-day" issues, but was not to handle matters of importance; and Plaintiff no longer participated in executive meetings.  That Defendants wanted to use Plaintiff as an independent contractor to take advantage of the institutional knowledge he had acquired in his five years at Omega does not call into question Defendants' belief that he was not an adequate executive.

Finally, Plaintiff argues that he does not need to demonstrate pretext because he has evidence of direct discrimination.  Plaintiff alleges that when he was fired, von Rosenberg told

him that he was "tired and old."[4]   Plaintiff first made this belated accusation during his deposition, eighteen months after he was fired.   Plaintiff never mentioned this comment in a memorandum he wrote five days after his termination that documented the conversation he had with von Rosenberg, nor did he state it in the sworn statement attached to his EEOC charge filed on May 23, 2003, in his Original Complaint filed on September 10, 2003, in his First Amended Complaint filed on December 3, 2003, or in his Second Amended Complaint filed on April 26, 2004.   As Defendants point out, Plaintiff's first mention of the "too old and tired" comment occurred only three weeks after one of the cases he relies on in his briefing was issued, containing these exact same words.[5]   Although the Court must construe all facts in favor of Plaintiff, it is not required to accept as true a statement that no reasonable person would believe. *See Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (stating that in determining summary judgment, "testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it.").   Plaintiff has not adequately shown direct evidence of age discrimination.

Because Plaintiff has not shown that Defendants' reasons for terminating him are pretext, Defendants are entitled to summary judgment on Plaintiff's claim of age discrimination.

## IV.   ERISA

Plaintiff also claims that Defendants wrongfully interfered with his employment benefits in violation of ERISA.   Under ERISA, it is unlawful for an employer "to discharge . . . or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."   29

---

[4] Defs.' Mot. for Summ. J. Ex. 2 at p.115.  Later, in his affidavit, Plaintiff states that von Rosenberg told him he was "too old and tired."  Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 at p.3.
[5] *Hofmann v. District Council 37*, 2004 WL 1936242 (S.D.N.Y. Aug. 31, 2004) ("he was too tired and old to pay attention").

U.S.C. § 1140.  To prove a violation of ERISA, Plaintiff must establish a prima facie case that Defendants fired him with a specific discriminatory intent to violate the Act.  *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 979-80 (5th Cir. 1993).  Specific intent must be proven with positive evidence, speculation and conclusory allegations will not suffice.  *See Stafford v. True Temper Sports*, 123 F.3d 291, 295-96 (5th Cir. 1997).  To dispel the inference of discrimination, Defendants must articulate a legitimate, non-discriminatory reason for its actions.  If this occurs, then the burden shifts back to Plaintiff to demonstrate pretext.  *Id.*

Plaintiff contends that Defendants had the specific intent to terminate his employment benefits when they fired him because he was immediately re-hired as an independent contractor, performing the identical duties he had been performing prior to his termination; thus, the only effective change was that he would no longer be entitled to any employee benefits, including retirement benefits, disability benefits, health insurance, and life insurance.  As previously discussed, Plaintiff's argument is without merit.  He did not perform the same functions or have the same responsibilities as an independent contractor as he had possessed as a vice president. Firing Plaintiff from his vice president position, then rehiring him as a supervised independent contractor with greatly reduced responsibilities, does not evince a specific intent to violate ERISA.  Furthermore, Defendants have adequately provided legitimate reasons for terminating Plaintiff, which Plaintiff has not shown to be pretext.  Defendants are therefore entitled to summary judgment on Plaintiff's ERISA claim as well.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. #27) is **GRANTED**.  All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.  Defendants' Motion in Limine (Doc. #37) is **DENIED AS MOOT**.

IT IS SO ORDERED.

SIGNED this 29th day of June, 2005.


_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**